## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ALLISON GREAGER,<br><br>                Plaintiff,<br><br>        v.<br><br>MCNEIL-PPC, INC.; MCNEIL CONSUMER HEALTHCARE; MCNEIL CONSUMER PHARMACEUTICALS CO.; JOHNSON & JOHNSON CONSUMER INC.; ORTHO-CLINICAL DIAGNOSTICS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICALS, INC.; JOHNSON & JOHNSON; WALMART INC.; PERRIGO COMPANY PLC; PERRIGO PHARMACEUTICALS COMPANY; APOTHECON LLC.; BRISTOL-MYERS SQUIBB COMPANY; TEVA PHARMACEUTICALS USA, INC.; and TEVA PHARMACEUTICALS INDUSTRIES LTD.,<br><br>                                Defendants. | No.  1:19-cv-918<br><br><br><br><br><br><br><br><br><br>Jury Demanded |

## COMPLAINT AT LAW

Now comes the Plaintiff, ALLISON GREAGER, by and through her attorneys, Michelle

N. Schneiderheinze and Dennis A. VanDerGinst and of VANDERGINST LAW, P.C., and hereby

files her Complaint and alleges as follows:

### Introduction

1.       This is a pharmaceutical product liability action under Illinois state law arising from

the ingestion of over-the-counter Motrin IB (hereinafter "Motrin"), over-the-counter Equate-branded

Ibuprofen sold by WalMart Inc. (hereinafter "Equate Ibuprofen"), prescription Principen, and

prescription penicillin, by Plaintiff ALLISON GREAGER, when she was 12 years old.[1]

2.     ALLISON GREAGER developed a severe and often-fatal skin disorder known as Stevens-Johnson Syndrome (hereinafter "SJS") and/or Toxic Epidermal Necrolysis (hereinafter "TEN") after taking Motrin, Equate Ibuprofen, Principen, and penicillin in 2012.

3.     This suit against the manufacturers of Motrin, Equate Ibuprofen, Principen, and penicillin seeks compensatory damages for the severe and permanent injuries to Plaintiff's skin, lungs, hearing, and other bodily organs, which will require lifelong medical care, as well as punitive damages for the willful and wanton misconduct of Defendants.

## Parties

4.     Plaintiff ALLISON GREAGER, is a citizen and resident of the State of Illinois residing in Hinsdale, Illinois.

5.     Defendant MCNEIL-PPC, INC., is a corporation that was incorporated under the laws of the State of New Jersey with its principal place of business in the State of Pennsylvania, at 7050 Camp Hill Rd., Fort Washington, PA 19034.

6.     Defendant, MCNEIL CONSUMER HEALTHCARE, is a Division of MCNEIL-PPC, INC.

7.     MCNEIL-PPC, INC. also does business as Defendant MCNEIL CONSUMER PHARMACEUTICALS CO.

8.     On information and belief, MCNEIL-PPC, INC. currently conducts business as JOHNSON & JOHNSON CONSUMER INC.

---

[1] The undersigned has intentionally utilized allegations originally drafted by plaintiffs' counsel in Newman et al v. McNeil Consumer Healthcare et al, NDIL 10-CV-1541 and contained in Plaintiffs' Second Amended Complaint at Law (Doc # 543) filed therein, because, among other things, plaintiff states similar claims and seeks similar relief to the plaintiffs in that case. The undersigned expressly credits Kathryn Pryor, David C. Greenstone, and Christopher Panatier of Simon, Eddins and Greenstone LLP and James E. Ocasek of Cooney & Conway for this work.

9.　　On information and belief, JOHNSON & JOHNSON CONSUMER, INC. is a successor in interest to MCNEIL-PPC, INC.

10.　　Defendant JOHNSON & JOHNSON CONSUMER INC. is a corporation that is incorporated under the laws of the State of New Jersey with its principal place of business in the State of New Jersey, 199 Grandview Road, Skillman, NJ 08558.

11.　　Defendant ORTHO-CLINICAL DIAGNOSTICS, INC. is a corporation that is incorporated under the laws of the State of New York with its principal place of business in the State of New Jersey, 1001 US Highway Route 202 N., Raritan, NJ, 08869.

12.　　Defendant ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. was incorporated under the laws of the State of Pennsylvania with its principal place of business in the State of New Jersey, 1125 Trenton-Harbourton Road, Titusville, NJ 08560.

13.　　Defendant JANSSEN PHARMACEUTICALS, INC. is incorporated is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in the State of New Jersey, 1125 Trenton-Harbourton Road, Titusville, NJ 08560.

14.　　Defendant JOHNSON & JOHNSON is incorporated under the laws of the State of New Jersey with its principal place of business in the State of New Jersey.

15.　　Defendant WALMART INC., formerly Wal-Mart Stores, Inc., is incorporated under the laws of the State of Delaware with its principal place of business in the State of Arkansas, 702 SW 8th Street, Bentonville, AR 72716.

16.　　Defendant L. PERRIGO COMPANY PLC is a foreign corporation incorporated under the laws of Ireland, with its principal place of business in the State of Michigan.

17.　　Defendant PERRIGO PHARMACEUTICALS COMPANY is incorporated under the laws of the State of Michigan with its principal place of business at 601 Abbott Road, East Lansing,

Michigan.

18.      Defendant APOTHECON LLC is incorporated under the laws of the State of Delaware with its principal place of business in the state of New Jersey, 777 Schudders Mill Road, Plainsboro, NJ 08536.

19.      Defendant BRISTOL-MYERS SQUIBB COMPANY is incorporated under the laws of the State of Delaware with its principal place of business in the state of New York, 345 Park Avenue Tax Department, 3rd Floor, New York, NY 10154.

20.      Defendant TEVA PHARMACEUTICALS USA, INC. is incorporated under the laws of the State of Delaware with its principal place of business at 1090 Horsham Road, Pennsylvania.

21.      Defendant TEVA PHARMACEUTICALS INDUSTRIES LTD. is a corporation organized and existing under the laws of Israel, with its principal place of business at 5 Basel Street, P.O. Box 3190, Petach Tikva, Israel.

## Jurisdiction

22.      The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) as the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

## Background

23.      On or about June 15, 2012, Plaintiff ALLISON GREAGER resided in Hinsdale, Illinois.

24.      On or about June 15, 2012, Plaintiff ALLISON GREAGER ingested Motrin IB and Equate-branded Ibuprofen to treat a fever.

25.      On or about June 19, 2012, Plaintiff ALLISON GREAGER ingested Principen and penicillin.

26.     On or about June 20, 2012, Plaintiff ALLISON GREAGER developed a progressively spreading rash and mouth ulcers.

27.      Shortly thereafter, ALLISON GREAGER was admitted to an emergency room in the Chicago, Illinois area with a severe rash.

28.     Plaintiff ALLISON GREAGER was then transferred to another hospital in Chicago where she was diagnosed with SJS and/or TEN, which manifested itself over large portions of ALLISON GREAGER'S body.

29.     Plaintiff ALLISON GREAGER spent approximately two weeks in the hospital receiving treatment for her SJS/TEN injuries, which included the loss of large portions of her skin and damage to her hearing, lungs, and other bodily organs.

30.     SJS and TEN are severe skin diseases characterized by blistering and detachment of significant portions of the surface of the skin, as well as damage to mucosal membranes like the linings of the mouth, nasal passages, eyes, gastrointestinal tract, lungs, rectum, and vagina.

31.     The Plaintiff had no knowledge of any unseen potential dangerous defect or condition in the OTC Motrin IB, Equate-branded Ibuprofen, Principen, or penicillin at the time ALLISON GREAGER used it, and certainly no knowledge that it could cause SJS and/or TEN or the severe consequences of SJS and/or TEN.

32.     Plaintiff ALLISON GREAGER used OTC Motrin IB,  Equate-branded Ibuprofen, Principen and penicillin in the manner intended and in accordance with instructions included with the OTC Motrin IB,  Equate-branded Ibuprofen, Principen and penicillin by Defendants.

33.     Defendants MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC.,   ORTHO-CLINICAL   DIAGNOSTICS,   INC.,   ORTHO-MCNEIL-JANSSEN

PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY (hereinafter collectively referred to as the "Ibuprofen Defendants") are or were, at all material times hereto, in the business of designing, manufacturing and marketing drugs called OTC Motrin IB and/or Equate-branded Ibuprofen (hereinafter referred to as "Ibuprofen").

34.     Defendants APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY (hereinafter collectively referred to as the "Principen Defendants") are or were, at all material times hereto, in the business of designing, manufacturing and marketing drugs called Principen.

35.     Defendants     TEVA PHARMACEUTICALS     USA,     INC.     and     TEVA PHARMACEUTICALS INDUSTRIES LTD., (hereinafter collectively referred to as the "Penicillin Defendants") are or were, at all material times hereto, in the business of designing, manufacturing and marketing penicillin.

## COUNT I
## Defective Design (Ibuprofen Defendants)

36.     OTC Motrin IB and Equate-branded Ibuprofen each have ibuprofen as the only active ingredient.

37.     The Ibuprofen Defendants are in the business of designing, manufacturing, selling and distributing Ibuprofen containing drugs to users in Illinois and throughout the United States through various retailers.

38.     The Ibuprofen Defendants intended that the Ibuprofen containing drugs reach users or consumers such as the Plaintiff in the condition in which they were originally sold and distributed by them.

39.     Defendants put these products into the stream of commerce without any alteration or

modification of the drugs by any distributor or retailer.

40.     The Ibuprofen drugs were defectively designed by Defendants so as to render them unreasonably dangerous to Plaintiff ALLISON GREAGER and other persons similarly situated, in that:

a.     Defendants chose to sell the Ibuprofen drugs without a prescription despite the risks of serious and permanently disabling injuries, such as those caused by SJS and/or TEN;

b.     When the Ibuprofen drugs are taken according to the instructions on the over-the-counter label they can cause SJS and/or TEN, or the severe consequences of SJS and/or TEN;

c.     Because the Ibuprofen drugs can cause SJS and/or TEN when taken as directed, they are not as safe as an ordinary consumer would expect;

d.     Defendants failed to adequately test the Ibuprofen drugs before selling and distributing them;

e.     Defendants failed to adequately and completely report the clinical trials data regarding the drugs;

f.     A safer alternative design would have prevented or significantly reduced the risk of SJS and/or TEN, or the severe consequences of SJS and/or TEN, to Plaintiff ALLISON GREAGER, without substantially impairing the drugs' utility;

g.     A safer, alternative design was economically and technologically feasible at the time the Ibuprofen drugs left the control of Defendants by the application of existing or reasonably achievable scientific knowledge;

h.     The Ibuprofen drugs' risk to children like ALLISON GREAGER far outweighed its benefit, particularly considering that there were other drugs on the market which were safer and equally as effective.

41.     The above defects existed at the time the drugs left the Ibuprofen Defendants' control.

42.     As a direct and proximate result of the aforesaid defects, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, the Plaintiff ALLISON GREAGER demands judgment against Defendants, MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY on this Count I for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT II
### Failure to Warn
### (Ibuprofen Defendants)

43.     The Ibuprofen drugs taken by Plaintiff had identical and/or nearly identical allergy statements on the labels.

44.     The Ibuprofen drugs were defective and unreasonably dangerous in that:

a.      There was no warning, or alternatively, no adequate warning that consumption

of the Ibuprofen drugs could result in the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury;

        b.      Defendants failed to adequately warn of latent dangers resulting from the foreseeable use of the Ibuprofen drugs of which Defendants knew or should have known;

        c.      The warnings and instructions that accompanied the Ibuprofen drugs provided inadequate warnings to the consumer about the risk of the severe consequences of SJS and/or TEN, the degree of the risk of SJS and/or TEN, and about the severe and permanently disabling injuries that can result from use of the products;

        d.      There were no warnings or inadequate warnings and instructions regarding what to do in the event the patient suffered an adverse skin reaction to the Ibuprofen drugs.

45.     At all relevant times, Defendants knew or should have known about the dangerous and toxic effects of the Ibuprofen drugs, including that they can cause SJS and/or TEN.

46.     Plaintiff, and/or her parents, would have read and heeded an adequate warning about the risks of the severe consequences of SJS/TEN.

47.     Plaintiff's parents would not have given Plaintiff the drugs if OTC Motrin IB and Equate-branded Ibuprofen warning labels had included a warning about the risk of the severe consequences of SJS/TEN or a warning that the drugs could cause severe injuries such as major skin loss, blindness, and permanent scarring, disability and disfigurement.

48.     If the warning label had adequately described the severe symptoms and injuries of SJS/TEN that could be caused by the Ibuprofen drugs or had adequately indicated what actions should be taken upon development of the symptoms and the reason why those actions were necessary to avoid a severe and permanently disabling reaction, Plaintiff would not have developed SJS and/or TEN.

49.     As a direct and proximate result of the aforesaid conduct of the Ibuprofen Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY on this Count II for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT III
### Negligence
### (Ibuprofen Defendants)

50.     The Ibuprofen Defendants had a duty to use reasonable care in labeling, packaging, marketing, selling, advertising, warning, testing, designing, inspecting and otherwise distributing the Ibuprofen drugs to the public, including the Plaintiff.

51.     The Ibuprofen Defendants breached their duties in that they:

    a.     Knew or should have known that the Ibuprofen drugs were not reasonably safe

because they can cause SJS and/or TEN when taken as directed;

b. Placed the Ibuprofen drugs on the market without warning the user or consumer that consumption of these drugs could result in SJS and/or TEN, or the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury, despite their knowledge that the Ibuprofen drugs can cause SJS and/or TEN;

c. Failed to adequately warn Plaintiff regarding what to do if a skin reaction occurred and the reasons those actions were necessary to avoid a severe and permanently disabling reaction;

d. Failed to adequately test their products;

e. Failed to take other precautions to ensure that Plaintiff would not be injured from their products;

f. Chose to sell the drugs as over-the-counter drugs despite the risks that the drugs could cause serious and permanently disabling injuries such as those caused by SJS and/or TEN;

g. Intentionally manufactured the drugs for children and marketed them as safe for children despite risks of serious and permanently disabling injuries such as those caused by SJS and/or TEN;

h. Chose to sell the drugs over-the-counter despite the availability of safer products.

52. As a direct and proximate result of the aforesaid conduct of the Ibuprofen Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced

to spend more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLSION GREAGER demands judgment against Defendants, MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY on this Count III for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT IV
### Consumer Fraud
### (Ibuprofen Defendants)

53.     In the course of marketing and selling the drugs to the public, the Ibuprofen Defendants engaged in a deceptive act or practice by concealing the risk that consuming the drugs could result in the severe consequences of SJS and/or TEN, or any type of severe, permanently disabling skin reaction.

54.     The Ibuprofen Defendants concealed the risk by failing to place any type of warning regarding the consequences of SJS and/or TEN on the product label of the drugs and by failing to disclose to the public the clinical trials data regarding the drugs.

55.     In the course of marketing and selling the drugs to the public, the Ibuprofen Defendants also concealed the risk of the severe consequences of SJS and/or TEN by advertising the drugs as safe for children.

56.    The Ibuprofen Defendants represented that the drugs were safe and effective for treating fever and pain symptoms, without disclosing the extreme danger associated with a toxic reaction to these drugs.

57.    The risk of severe and permanently disabling disease is the type of information that consumers, including Plaintiff, are expected to rely on in making the decision to purchase and use the drugs.

58.    Defendants intended that Plaintiff rely on their deception in purchasing and using the drugs.

59.    Plaintiff would not have bought or used the drugs if they had known that taking the drugs posed a risk of the consequences of SJS and/or TEN or any type of severe, permanently disabling reaction.

60.    As a direct and proximate result of the Ibuprofen Defendants' deception in concealing the risk of SJS and/or TEN, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future and, further was deprived of carrying out their life activities and affairs for a long period of time and will continue to be deprived of carrying out her life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN

PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY on this Count IV for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT V**
**Breach of Implied Warranty of Fitness**
**(Ibuprofen Defendants)**

61.     The Ibuprofen Defendants impliedly warranted to the public generally and specifically to Plaintiff that the drugs were of merchantable quality and were safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner.

62.     The Ibuprofen Defendants knew or had reason to know of the purposes for which Plaintiff purchased the Ibuprofen drugs; that Plaintiff was relying on Defendants' skill and judgment to select and furnish suitable drugs; and that the Ibuprofen drugs in question were unfit for the purpose for which they were intended to be used.

63.     As a direct and proximate result of the aforesaid breach, the Plaintiff ALLISON GREAGER sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, MCNEIL-PPC, INC., MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER

PHARMACEUTICALS CO., JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY on this Count V for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT VI**
**Willful and Wanton Misconduct**
**(Ibuprofen Defendants)**

64.     The Ibuprofen Defendants had a duty to refrain from acting willfully and wantonly and in a manner that exhibited a reckless disregard for the safety of Plaintiff.

65.     Defendants knew about the causal connection between ibuprofen and SJS/TEN long before they made the decision to manufacture and sell products containing ibuprofen as an active ingredient.

66.     Defendants are guilty of one or more of the following outrageous acts or omissions amounting to willful and wanton misconduct:

a.      Intentionally or with a reckless disregard for the safety of Plaintiff, manufactured and marketed the drugs without a warning that the drugs could cause serious and permanently disabling injuries, such as those caused by SJS and/or TEN, even though it was completely foreseeable and could or should have been anticipated that children such as Plaintiff ALLISON GREAGER would ingest the drugs, and Defendants had actual knowledge regarding the potential of the drugs to cause serious and permanently disabling injuries such as those caused by SJS and/or TEN;

b.      Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured and marketed the drugs without adequate warnings regarding the severe consequences of SJS and/or

TEN, even though the Defendants knew that said drugs could have a highly deleterious effect upon the health of persons ingesting the drugs and had always included a warning about SJS/TEN on the prescription forms of their products and on some ibuprofen products that they or related companies sold in foreign countries;

      c.     Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured and marketed the drugs when a safer alternative was available;

      d.     Intentionally or with a reckless disregard for the health of the Plaintiff, failed to provide any or adequate warnings when Defendants knew that their label was inadequate and misleading;

      e.     Intentionally or with reckless disregard chose to sell the drugs over the counter despite actual knowledge of the risks of serious and permanently disabling injuries such as those caused by SJS and/or TEN.

67.     Defendants' conduct was a proximate cause of the Plaintiff's injuries.

68.     As a direct and proximate result of Defendants' conduct, the Plaintiff ALLISON GREAGER suffered severe injuries and damages, including, but not limited to, the following:

      a.     Disfigurement in the past and future;

      b.     Disability in the past and future;

      c.     Loss of normal life in the past and future;

      d.     Pain and suffering in the past and future;

      e.     Emotional distress in the past and future;

      f.     Caretaking expenses in the past and future;

      **g.**     Loss of future earnings and earning capacity.

WHEREFORE, Plaintiff ask for judgment against Defendants MCNEIL-PPC, INC.,

MCNEIL CONSUMER HEALTHCARE, MCNEIL CONSUMER PHARMACEUTICALS CO.,

JOHNSON & JOHNSON CONSUMER INC., ORTHO-CLINICAL DIAGNOSTICS, INC.,

ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN

PHARMACEUTICALS, INC., JOHNSON & JOHNSON, WALMART INC., PERRIGO

COMPANY PLC, PERRIGO PHARMACEUTICALS COMPANY for the following:

  a.  Compensatory, economic and non-economic damages;

  b.  Prejudgment and post judgment interest;

  c.  Punitive damages for Defendants' willful and wanton conduct;

  d.  Costs of suit;

  e.  All other relief the Court deems appropriate.

**COUNT VII**
**Defective Design (Principen**
**Defendants)**

69.  The Principen Defendants are in the business of designing, manufacturing, selling and distributing Principen to users in Illinois and throughout the United States through various pharmacies.

70.  The Principen Defendants intended that their drugs reach users or consumers such as the Plaintiff in the condition in which they were originally sold and distributed by them.

71.  Defendants put these products into the stream of commerce without any alteration or modification of the drugs by any distributor or retailer.

72.  Principen was defectively designed by Defendants so as to render it unreasonably dangerous to Plaintiff ALLISON GREAGER and other persons similarly situated, in that:

  a.  When the Principen is taken according to instructions it can cause SJS and/or TEN, or the severe consequences of SJS and/or TEN;

b.    Because Principen can cause SJS and/or TEN when taken as directed, it is not as safe as an ordinary consumer would expect;

c.    Defendants failed to adequately test the Principen before selling and distributing it;

d.    Defendants failed to adequately and completely report the clinical trials data regarding the drugs;

e.    A safer alternative design would have prevented or significantly reduced the risk of SJS and/or TEN, or the severe consequences of SJS and/or TEN, to Plaintiff ALLISON GREAGER, without substantially impairing the drugs' utility;

f.    A safer, alternative design was economically and technologically feasible at the time the Principen left the control of Defendants by the application of existing or reasonably achievable scientific knowledge;

g.    The Principen's risk to children like ALLISON GREAGER far outweighed its benefit, particularly considering that there were other drugs on the market which were safer and equally as effective.

73.    The above defects existed at the time the drugs left the Principen Defendants' control.

74.    As a direct and proximate result of the aforesaid defects, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, the Plaintiff ALLISON GREAGER demands judgment against Defendants, APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY on this Count VII for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT VIII**
**Failure to Warn**
**(Principen Defendants)**

75.      Principen was defective and unreasonably dangerous in that:

a.      There was no warning, or alternatively, no adequate warning that consumption of the Principen drugs could result in the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury;

b.      Defendants failed to adequately warn of latent dangers resulting from the foreseeable use of the Principen drugs of which Defendants knew or should have known;

c.      The warnings and instructions that accompanied the Principen drugs provided inadequate warnings to the consumer about the risk of the severe consequences of SJS and/or TEN, the degree of the risk of SJS and/or TEN, and about the severe and permanently disabling injuries that can result from use of the products;

d.      There were no warnings or inadequate warnings and instructions regarding what to do in the event the patient suffered an adverse skin reaction to the Principen drugs.

76.      At all relevant times, Defendants knew or should have known about the dangerous and toxic effects of the Principen drugs, including that they can cause SJS and/or TEN.

77.      Plaintiff, and/or her parents, would have read and heeded an adequate warning about the risks of the severe consequences of SJS/TEN.

78.      Plaintiff's parents would not have given Plaintiff the drugs if Principen warning

labels had included a warning about the risk of the severe consequences of SJS/TEN or a warning that the drugs could cause severe injuries such as major skin loss, blindness, and permanent scarring, disability and disfigurement.

79.     If the warning label had adequately described the severe symptoms and injuries of SJS/TEN that could be caused by the Principen drugs or had adequately indicated what actions should be taken upon development of the symptoms and the reason why those actions were necessary to avoid a severe and permanently disabling reaction, Plaintiff would not have developed SJS and/or TEN.

80.     As a direct and proximate result of the aforesaid conduct of the Principen Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY on this Count VIII for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

### COUNT IX
### Negligence
### (Principen Defendants)

81.     The Principen Defendants had a duty to use reasonable care in labeling, packaging,

marketing, selling, advertising, warning, testing, designing, inspecting and otherwise distributing Principen to the public, including the Plaintiff.

82.     The Principen Defendants breached their duties in that they:

a.     Knew or should have known that Principen was not reasonably safe because it can cause SJS and/or TEN when taken as directed;

b.     Placed the Principen drugs on the market without warning the user or consumer that consumption of these drugs could result in SJS and/or TEN, or the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury, despite their knowledge that Principen can cause SJS and/or TEN;

c.     Failed to adequately warn Plaintiff regarding what to do if a skin reaction occurred and the reasons those actions were necessary to avoid a severe and permanently disabling reaction;

d.     Failed to adequately test their products;

e.     Failed to take other precautions to ensure that Plaintiff would not be injured from their products;

83.     As a direct and proximate result of the aforesaid conduct of the Principen Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLSION GREAGER demands judgment against Defendants, APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY on this Count IX for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT X**
**Consumer Fraud**
**(Principen Defendants)**

84.    In the course of marketing and selling the drugs to the public, the Principen Defendants engaged in a deceptive act or practice by concealing the risk that consuming the drugs could result in the severe consequences of SJS and/or TEN, or any type of severe, permanently disabling skin reaction.

85.    The Principen Defendants concealed the risk by failing to place any type of warning regarding the consequences of SJS and/or TEN on the product label of the drugs and by failing to disclose to the public the clinical trials data regarding the drugs.

86.    The Principen Defendants represented that the drugs were safe and effective for treatment of infection, without disclosing the extreme danger associated with a toxic reaction to these drugs.

87.    The risk of severe and permanently disabling disease is the type of information that consumers, including Plaintiff, are expected to rely on in making the decision to purchase and use the drugs.

88.    Defendants intended that Plaintiff rely on their deception in purchasing and using the drugs.

89.    Plaintiff would not have bought or used the drugs if they had known that taking the drugs posed a risk of the consequences of SJS and/or TEN or any type of severe, permanently

disabling reaction.

90.     As a direct and proximate result of the Principen Defendants' deception in concealing the risk of SJS and/or TEN, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future and, further was deprived of carrying out their life activities and affairs for a long period of time and will continue to be deprived of carrying out her life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY on this Count X for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT XI
## Breach of Implied Warranty of Fitness
## (Principen Defendants)

91.     The Principen Defendants impliedly warranted to the public generally and specifically to Plaintiff that the drugs were of merchantable quality and were safe and fit for the purpose intended when used under prescribed circumstances and in a prescribed manner.

92.     The Principen Defendants knew or had reason to know of the purposes for which Plaintiff purchased the Principen drugs; that Plaintiff was relying on Defendants' skill and judgment to select and furnish suitable drugs; and that the Principen drugs in question were unfit for the purpose for which they were intended to be used.

93.     As a direct and proximate result of the aforesaid breach, the Plaintiff ALLISON

GREAGER sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, APOTHECON LLC. and BRISTOL-MYERS SQUIBB COMPANY on this Count XI for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

### COUNT XII
### Willful and Wanton Misconduct
### (Principen Defendants)

94.     The Principen Defendants had a duty to refrain from acting willfully and wantonly and in a manner that exhibited a reckless disregard for the safety of Plaintiff.

95.     Defendants knew about the causal connection between Principen and SJS/TEN in, long before they made the decision to manufacture and sell products containing Principen as an active ingredient.

96.     Defendants are guilty of one or more of the following outrageous acts or omissions amounting to willful and wanton misconduct:

a.     Intentionally or with a reckless disregard for the safety of Plaintiff, manufactured and marketed the drugs without a warning that the drugs could cause serious and permanently disabling injuries, such as those caused by SJS and/or TEN, even though it was completely foreseeable and

could or should have been anticipated that children such as Plaintiff ALLISON GREAGER would ingest the drugs, and Defendants had actual knowledge regarding the potential of the drugs to cause serious and permanently disabling injuries such as those caused by SJS and/or TEN;

b.  Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured and marketed the drugs without adequate warnings regarding the severe consequences of SJS and/or TEN, even though the Defendants knew that said drugs could have a highly deleterious effect upon the health of persons ingesting the drugs;

c.  Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured and marketed the drugs when a safer alternative was available;

d.  Intentionally or with a reckless disregard for the health of the Plaintiff, failed to provide any or adequate warnings when Defendants knew that their label was inadequate and misleading;

97.  Defendants' conduct was a proximate cause of the Plaintiff's injuries.

98.  As a direct and proximate result of Defendants' conduct, the Plaintiff ALLISON GREAGER suffered severe injuries and damages, including, but not limited to, the following:

a.  Disfigurement in the past and future;

b.  Disability in the past and future;

c.  Loss of normal life in the past and future;

d.  Pain and suffering in the past and future;

e.  Emotional distress in the past and future;

f.  Caretaking expenses in the past and future;

g.  Loss of future earnings and earning capacity.

WHEREFORE, Plaintiff ask for judgment against Defendants APOTHECON LLC. and

BRISTOL-MYERS SQUIBB COMPANY for the following:

     a.     Compensatory, economic and non-economic damages;

     b.     Prejudgment and post judgment interest;

     c.     Punitive damages for Defendants' willful and wanton conduct;

     d.     Costs of suit;

     e.     All other relief the Court deems appropriate.

**COUNT XIII**
**Defective Design (Penicillin**
**Defendants)**

99.     The Penicillin Defendants are in the business of designing, manufacturing, selling and distributing Penicillin to users in Illinois and throughout the United States through various pharmacies.

100.     The Penicillin Defendants intended that their drugs reach users or consumers such as the Plaintiff in the condition in which they were originally sold and distributed by them.

101.     Defendants put these products into the stream of commerce without any alteration or modification of the drugs by any distributor or retailer.

102.     Penicillin was defectively designed by Defendants so as to render it unreasonably dangerous to Plaintiff ALLISON GREAGER and other persons similarly situated, in that:

     a.     When the Penicillin is taken according to instructions it can cause SJS and/or TEN, or the severe consequences of SJS and/or TEN;

     b.     Because Penicillin can cause SJS and/or TEN when taken as directed, it is not as safe as an ordinary consumer would expect;

     c.     Defendants failed to adequately test the Penicillin before selling and distributing it;

     d.     Defendants failed to adequately and completely report the clinical trials data regarding

the drugs;

e.     A safer alternative design would have prevented or significantly reduced the risk of SJS and/or TEN, or the severe consequences of SJS and/or TEN, to Plaintiff ALLISON GREAGER, without substantially impairing the drugs' utility;

f.     A safer, alternative design was economically and technologically feasible at the time the Penicillin left the control of Defendants by the application of existing or reasonably achievable scientific knowledge;

g.     The Penicillin's risk to children like ALLISON GREAGER far outweighed its benefit, particularly considering that there were other drugs on the market which were safer and equally as effective.

103.     The above defects existed at the time the drugs left the Penicillin Defendants' control.

104.     As a direct and proximate result of the aforesaid defects, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, the Plaintiff ALLISON GREAGER demands judgment against Defendants, TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD. on this Count XIII for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT XIV
### Failure to Warn
### (Penicillin Defendants)

105.    Penicillin was defective and unreasonably dangerous in that:

a.     There was no warning, or alternatively, no adequate warning that consumption of the Penicillin drugs could result in the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury;

b.     Defendants failed to adequately warn of latent dangers resulting from the foreseeable use of the Penicillin drugs of which Defendants knew or should have known;

c.     The warnings and instructions that accompanied the Penicillin drugs provided inadequate warnings to the consumer about the risk of the severe consequences of SJS and/or TEN, the degree of the risk of SJS and/or TEN, and about the severe and permanently disabling injuries that can result from use of the products;

d.     There were no warnings or inadequate warnings and instructions regarding what to do in the event the patient suffered an adverse skin reaction to the Penicillin drugs.

106.    At all relevant times, Defendants knew or should have known about the dangerous and toxic effects of the Penicillin drugs, including that they can cause SJS and/or TEN.

107.    Plaintiff, and/or her parents, would have read and heeded an adequate warning about the risks of the severe consequences of SJS/TEN.

108.    Plaintiff's parents would not have given Plaintiff the drugs if Penicillin warning labels had included a warning about the risk of the severe consequences of SJS/TEN or a warning that the drugs could cause severe injuries such as major skin loss, blindness, and permanent scarring, disability and disfigurement.

109.    If the warning label had adequately described the severe symptoms and injuries of

SJS/TEN that could be caused by the Penicillin drugs or had adequately indicated what actions should be taken upon development of the symptoms and the reason why those actions were necessary to avoid a severe and permanently disabling reaction, Plaintiff would not have developed SJS and/or TEN.

110.     As a direct and proximate result of the aforesaid conduct of the Penicillin Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further was deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD. on this Count XIV for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT XV**
**Negligence**
**(Penicillin Defendants)**

111.     The Penicillin Defendants had a duty to use reasonable care in labeling, packaging, marketing, selling, advertising, warning, testing, designing, inspecting and otherwise distributing Penicillin to the public, including the Plaintiff.

112.     The Penicillin Defendants breached their duties in that they:

        a.     Knew or should have known that Penicillin was not reasonably safe because

it can cause SJS and/or TEN when taken as directed;

        b.     Placed the Penicillin drugs on the market without warning the user or consumer that consumption of these drugs could result in SJS and/or TEN, or the severe consequences of SJS and/or TEN, or any severe and permanently disabling injury, despite their knowledge that Penicillin can cause SJS and/or TEN;

        c.     Failed to adequately warn Plaintiff regarding what to do if a skin reaction occurred and the reasons those actions were necessary to avoid a severe and permanently disabling reaction;

        d.     Failed to adequately test their products;

        e.     Failed to take other precautions to ensure that Plaintiff would not be injured from their products;

113.     As a direct and proximate result of the aforesaid conduct of the Penicillin Defendants, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLSION GREAGER demands judgment against Defendants, TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD.on this Count XV for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

**COUNT XVI**
**Consumer Fraud**
**(Penicillin Defendants)**

114.    In the course of marketing and selling the drugs to the public, the Penicillin Defendants engaged in a deceptive act or practice by concealing the risk that consuming the drugs could result in the severe consequences of SJS and/or TEN, or any type of severe, permanently disabling skin reaction.

115.    The Penicillin Defendants concealed the risk by failing to place any type of warning regarding the consequences of SJS and/or TEN on the product label of the drugs and by failing to disclose to the public the clinical trials data regarding the drugs.

116.    The Penicillin Defendants represented that the drugs were safe and effective for treatment of infection, without disclosing the extreme danger associated with a toxic reaction to these drugs.

117.    The risk of severe and permanently disabling disease is the type of information that consumers, including Plaintiff, are expected to rely on in making the decision to purchase and use the drugs.

118.    Defendants intended that Plaintiff rely on their deception in purchasing and using the drugs.

119.    Plaintiff would not have bought or used the drugs if they had known that taking the drugs posed a risk of the consequences of SJS and/or TEN or any type of severe, permanently disabling reaction.

120.    As a direct and proximate result of the Penicillin Defendants' deception in concealing the risk of SJS and/or TEN, the Plaintiff, ALLISON GREAGER, sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and

body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of her injuries, was caused to spend large sums of money for said medical attention and will be forced to spend more money in the future and, further was deprived of carrying out their life activities and affairs for a long period of time and will continue to be deprived of carrying out her life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD.on this Count XVI for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT XVII
### Breach of Implied Warranty of Fitness
### (Penicillin Defendants)

121.    The Penicillin Defendants impliedly warranted to the public generally and specifically to Plaintiff that the drugs were of merchantable quality and were safe and fit for the purpose intended when used under prescribed circumstances and in a prescribed manner.

122.    The Penicillin Defendants knew or had reason to know of the purposes for which Plaintiff purchased the Penicillin drugs; that Plaintiff was relying on Defendants' skill and judgment to select and furnish suitable drugs; and that the Penicillin drugs in question were unfit for the purpose for which they were intended to be used.

123.    As a direct and proximate result of the aforesaid breach, the Plaintiff ALLISON GREAGER sustained and will continue to sustain serious and permanent injuries, suffered and will continue to suffer great pain of mind and body, was forced to seek medical attention and will be forced to seek further medical attention in the future due to the permanent nature of their injuries, was caused to spend large sums of money for said medical attention and will be forced to spend

more money in the future, and further were deprived of carrying out her normal life activities and affairs for a long period of time and will continue to be deprived of carrying out her normal life activities and affairs in the future due to the permanent nature of her injuries.

WHEREFORE, Plaintiff ALLISON GREAGER demands judgment against Defendants, TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD.on this Count XVII for a sum in excess of the jurisdictional amount and punitive damages, together with interest, attorneys' fees and costs of suit.

## COUNT XVIII
### Willful and Wanton Misconduct
### (Penicillin Defendants)

124.    The Penicillin Defendants had a duty to refrain from acting willfully and wantonly and in a manner that exhibited a reckless disregard for the safety of Plaintiff.

125.    Defendants knew about the causal connection between Penicillin and SJS/TEN in, long before they made the decision to manufacture and sell products containing Penicillin as an active ingredient.

126.    Defendants are guilty of one or more of the following outrageous acts or omissions amounting to willful and wanton misconduct:

a.      Intentionally or with a reckless disregard for the safety of Plaintiff, manufactured and marketed the drugs without a warning that the drugs could cause serious and permanently disabling injuries, such as those caused by SJS and/or TEN, even though it was completely foreseeable and could or should have been anticipated that children such as Plaintiff ALLISON GREAGER would ingest the drugs, and Defendants had actual knowledge regarding the potential of the drugs to cause serious and permanently disabling injuries such as those caused by SJS and/or TEN;

b.      Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured

and marketed the drugs without adequate warnings regarding the severe consequences of SJS and/or TEN, even though the Defendants knew that said drugs could have a highly deleterious effect upon the health of persons ingesting the drugs;

c. Intentionally or with a reckless disregard for the safety of the Plaintiff, manufactured and marketed the drugs when a safer alternative was available;

d. Intentionally or with a reckless disregard for the health of the Plaintiff, failed to provide any or adequate warnings when Defendants knew that their label was inadequate and misleading;

127. Defendants' conduct was a proximate cause of the Plaintiff's injuries.

128. As a direct and proximate result of Defendants' conduct, the Plaintiff ALLISON GREAGER suffered severe injuries and damages, including, but not limited to, the following:

a. Disfigurement in the past and future;

b. Disability in the past and future;

c. Loss of normal life in the past and future;

d. Pain and suffering in the past and future;

e. Emotional distress in the past and future;

f. Caretaking expenses in the past and future;

g. Loss of future earnings and earning capacity.

WHEREFORE, Plaintiff ask for judgment against Defendants TEVA PHARMACEUTICALS USA, INC. and TEVA PHARMACEUTICALS INDUSTRIES LTD for the following:

a. Compensatory, economic and non-economic damages;

b. Prejudgment and post judgment interest;

c. Punitive damages for Defendants' willful and wanton conduct;

d. Costs of suit;

e. All other relief the Court deems appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

_/s/ Michelle N. Schneiderheinze_
Michelle N. Schneiderheinze, Esq.#6272646
Dennis A. VanDerGinst, Esq.      # 6202038
VanDerGinst Law, P.C.
4950 38th Avenue
Moline, Illinois 61265
(309) 788-5297
(309) 517-3020 fax
m.schneiderheinze@vlaw.com
d.vanderginst@vlaw.com
**ATTORNEYS FOR PLAINTIFF**